Ruffin, C. J.
 

 On the points distinctly made in the bill, and upon which the case seems to have been considered on . the circuit, and, indeed, was argued before us, the opinion of this Court would be the same his Honor gave. It seems to have been taken for granted by all parties, that the judgment of Delamothe attached on this land, either as the legal estate of the debtor, E. L. Morgan, or as being held in trust for him, and therefore, that the purchaser under that judgment would have the preferable title in a Court of Law, as against one purchasing from E. L. Morgan himself, subsequently to the rendering the judgment, and the
 
 teste
 
 of the
 
 fieri facias
 
 issued on it. Upon this idea, the plaintiff, after failing at law, filed this bill for the purpose of being relieved against Harris’ title, upon several equitable grounds. As far as the grounds of that kind extend, as mentioned in the bill, we think the plaintiff must fail. For, if Delamothe’s judgment constituted a lien on the land, or rather, if the execution issued on it, created a lien, by relation, from its
 
 teste,
 
 we do aot see any thing in the conduct of Harris, which would prevent him from claiming all the advantages and rights that any other purchasers could. The right to a preference belonged to the judgment creditor, and every person becoming the purchaser under the execution, would entitle himself to the creditor’s priority. That Harris had been paid debts by Morgan, out of the purchase money, makes no difference, for if he had not bid for the land, some one else would, and the plaintiff would have lost it at all events. He would, however, iq each case, lose it by his own fault, in buying
 
 *294
 
 land subject to a prior incumbrance of a judgment and execution, and being so negligent as not to pay it oH, but allow the land to be sold under it. If Harris had drawn the plain- ^ the contract, with the view of being paid his debts, while he deceived the plaintiff as to the title he was getting, it might be different, and Harris might, perhaps, be held to be a trustee of the legal title subsequently got by him at the Sheriff’s sale. But Harris seems to have had nothing whatever todo with the treaty between Hall and Morgan, at any time: all he did in the business, being to act as accountant in stating the debts of Morgan payable out of the price, and striking the balance. He received some of
 
 the money, bat
 
 not as a person interested in the sale, and only as being paid to him by Morgan after he received it, or became entitled to it, as the price of the land sold by him. Moreover, as against a judgment creditor, a purchaser of a legal estate must take notice, that the debt has been reduced to judgment at the time of his purchase, and that the execution will overreach his purchase, or else, the rule of law upon that subject would in effect be abrogated. But in this case, the answer removes every pretence of hardship on the plaintiff in that respect, by the positive statement, responsive to the bill, that this defendant gave the plaintiff express notice of the judgment, and of the opinion of counsel, that the land would be bound, if the plaintiff should buy. Upon each of these grounds, we think the plaintiff would have no equity on that part of the case.
 

 We are likewise of opinion, that the plaintiff has not an equity to be subrogated to the rights of the creditors secured by the deed of trust, as upon the supposition that the plaintiff paid those creditors, and, therefore, ought tosfandin their places. It appears both by the bill and the answer, that it was not' the intention to keep those debts on foot, nor, of course, the deed of trust, as far as it was a security for them. The intent was to pay them, and the belief was, that by so doing, the deed itself became inoperative; which, to be sure, was a mistake, as far as the legal title of the trustee goes)
 
 *295
 
 and as far as a trust resulted thereon, in favor of E. L. Morga or his assignee. But the debts to the sureties were both in law and fact paid; but, like those to Harris, were paid by Morgan out of his money, which he received for the sale of his resulting trust to the plaintiff, and not by the plaintiff out of his own money. That deed cannot, therefore, be set up now as a surety for debts, which the parties intended should be paid, and were paid and extinguished.
 

 . But the Court is of opinion, that upon another ground, as far as the case now appears, the plaintiff may be entitled to relief, and, therefore that the injunction ought to have been ordered to stand until the hearing. That ground is, that the answer does not state a case, in which the land was certainly liable to be sold under the judgment and execution, so as to defeat the admitted and honest purchase of the plaintiff. Morgan had not the legal title when the judgment was taken, nor at any time after; and therefore, at common law, the “ land was not subject to be sold on execution, but became so, if at all, by the act of 1S12. It is obvious,. from the statements of the answer, that on the trial at law, the question was treated, either as if Morgan had the legal title, or as if his resulting trust would be bound by the judgment and execution, in the same manner as his legal title would have been. The relation of a
 
 fieri facias
 
 at common law is to the
 
 teste ;
 
 and it is settled, that if the
 
 teste
 
 of the execution and the alienation by the debtor be of the same day, the former is preferred, and a purchaser under the execution gets the title. That is the case, when the interest of the debtor is a legal one, either in personal or real property. But as relates to equitable interests made subject to execution at law, the statute establishes a different rule. The first section of the act of 1812, is taken from the statute, 29 Car. II. c. 3, s. 10. They both require every Sheriff, to whom a writ shall be directed, &c. to do execution unto the party in that behalf, suing execution of all such lands, &c. as any
 
 other •person
 
 shall be seised of, &c.
 
 in trust for Mm, against
 
 whom execution is sued, as he might, if the
 
 said
 
 party, a
 
 *296
 
 gainst whom execution shall bé sued &c. had been seised &c. of such land, &c. of such estate as they beseised of in trust for him
 
 “at thetime of the said execution sued.”
 
 The liability of trusts tQ e¿ecU(¿on jg not. therefore, as at common law, or under the statute of Westminster, from the judgment or
 
 teste
 
 of the execution, according to the nature oí the property,
 
 hut from execution sued.
 
 This was so held in the first year of George the first, in the case of
 
 Hunt
 
 v Coles, reported by Chief Baron Comyns. 1 Com. Hep.- 226. The case was, thatH. Saursby was seised in fee of lands in trust, and to the intent that P. Chamberlain and his wife Anne should have £40 it year out of the profits for life, and the rest of
 
 the
 
 profits should be paid to Hope Chamberlain and the heirs of his body. Then in Trinity term, 1695, one Boardman recovered judgment against Hope C. for a debt of £160. On the 26th of July, 1699, Anne C. and Hope C. borrowed £600 from the defendant Coles, and for surety therefor, H. Saursby, by their direction, mortgaged the premises to Coles for 500 years. In 1714, Boardman sued out an elegit on his judgment againt Hope Chamberlain, and upon an inquisition it was found, that Hope C. was seised in fee, and the Sheriff extended one-half, and delivered it to the creditor', on whose demise an action of ejectment was brought against Coles. And it was held, that by force of the words in the statute, “
 
 at the time of the execution sued,”
 
 the plaintiff could not recover, although the trustee was seised in trust for
 
 the
 
 debt- or at the time of the judgment rendered, and long after. As the trustee had conveyed the lands to another person before the execution was sued, though after the judgment, the case was not within the act of Parliament. It appears from the report, that Chief Baron Comyns was himself of counsel for the plaintiff; and he seems to have been entirely satisfied with the judgment, and states it with his approbation in his Digest. Execution, c. 14. It is mentioned in the case, that Sir Edward Norti-iey remarked, after the decision, that, ever sincethe act, that had been thought the proper construction, though he did not know that it had been judicially, de
 
 *297
 
 cided; and then Mr. Justice Tract mentioned a case Queen Ann’s reign, in which Chief Justice ^Trevor had ■given that opinion in the Common Pleas, without any dissent from the other members of the Court. The case of
 
 Hunt
 
 v
 
 Coles
 
 is subsequently cited b.y all writers on trusts, and in treating of them and their liability for debts,- as establishing the rule, that the relation of trustee and of the defendant in the execution as
 
 cestui que trust,
 
 must exist at the time of execution sued.
 
 2
 
 Comyn’s Dig. 71. If the trustee has conveyed to another, then the case is out of the statute. So, it follows, that if the debtor has assignéd his beneficial interest to another,'so that the trustee is no longer trustee for the debtor, but, in the contemplation of equity, is trustee to the.assignee of the original
 
 cestui que trust,
 
 the case must be equally out of the' statute, the words being “in trust for him
 
 against whom execution is'sued, at the time of the said execution sued."
 

 In the present case the purchase by the plaintiff of the resulting trust of Morgan with the knowledge and approbation of Cotton, the trustee, unquestionably, as between those three persons, converted Cotton into a trustee for the -plaintiff and authorised him to call for the legal title and have it decreed in this Court. The defendant, Harris, says however, that, although that may be true as between those persons, if alone concerned, it is not true here, because Delamothe’s execution created a probable lien. But he says that, very plainly, upon the supposition that the execution created a lien from its
 
 teste,
 
 as inordinary cases, and not horn “the-time of execution sued.” Hence he insists, that the plaintiff did not purchase on the 2d day of March, but afterwards, that is to say, on the 16th day of March; and further, that, if the purchase was on either of thosédays, if was not valid, as the judgment was rendered as of the 2d day of March also, and the execution binds from that day. But we have, seen,that in point of law the position is untrue; and that the execution does not bind but from the time it was sued" Now, that time is not set forth in the answer; and it may have been.after even the 16th of March; at'which latter day the'
 
 *298
 
 answer admits the. plaintiff completed his purchase, and took the deed. Therefore, the plaintiff’s equity, founded up' on his purchase of the trust estate is not completely answer ed; as his purchase cannot be defeated by the sale under execution, unless the writ was actually sued before or on the 16th of March. As the answer does not state the fact, i-will be the subject of proof in the cause; and until it be proved, the injunction should have been kept up.
 

 It may be said, that this defence might have been made at law; for if the case was not within the act of 1812, Harris did not get the legal title under his purchase, and therefore ought not to have recovered. It is probable, that Harris recovered at law without going into the legal title further than to shew, that he and Hall both claimed under Morgan, and therefore that Hall was estopped at law to deny the title to have been in Morgan. For so it appeared on the deeds of the parties; neither professing to pass the trust, but the one tobe a Sheriff’s deed for the land, and the other, Morgan’s deed of bargain and sale. It is. not intimated in the bill or answer, that the outstanding title in Cotton was mentioned on the,trial, and the present plaintiff, not having the deed; could not shew it. It is true, as we think, that Hall was not estopped to insist upon that outstanding title, if he could have shewn the deed. He was only estopped to say, that Morgan had no interest, because he claimed to derive an interest under him. But he was at liberty to shew what his true interest was, and that it had been assigned
 
 to him in such
 
 a manner and at such a time, as prevented it or the land from being liable to be sold by the execution under which Harris bought. But admitting that to have been so, that will not oust the Court of Equity of its original jurisdiction over this, as a case of trust, and upon that footing its right to relieve the plaintiff, as aperson entitled as
 
 cestui que trust. Henderson
 
 v Hoke, 1 Dev. & Bat. Eq. 119. 138. Here upon the shewing of all. parties, the plaintiff would have a right to a decree against Cotton for a conveyance of the legal title unless it was divested out of Cotton by the purchase of Harris under the act of 1812.
 

 
 *299
 
 It does not yet appear to have been so divested, because it does not appear when the execution was sued. If it turn out, that it was before the plaintiff’s purchase, then the plaintiff’s bill will be dismissed. If afterwards, there, then, should be a decree that Cotton convey to the plaintiff; and, for his safety, it was proper that Morgan and Harris should be parties to this suit, in order that they should be concluded by the decree, and not at liberty to harrass him with -another suit after he had conveyed under a decree in this. This being so, it follows that until the plaintiff’s right, as equitable owner as set up by him, has been determined against him or appears upon the answer to be unfounded, his possession ought not to be disturbed. For to what end should he be turned out, when he may in this suit compel his trustee to convey to them the legal title, and as soon as he shall, he wilt in his turn bring an ejectment against Harris, another party to this suit, and evict him? That double litigation at law is avoided, if this Court, having all the parties before it, in respect of one of its peculiar.subjects of jurisdiction, namely, a trust for the plaintiff, in which the others allege an interest, shall proceed to determine the rights of all those who thus claim an interest in the subject. Therefore, although it might not have been indispensable, that the plaintiff should have made Harris a party to his bill against Morgan and Cotton, seeking a conveyance from the latter, yet it is convenient and useful - that he should have done so, as it saves furtherlitigation and expense, and enables the Court to decree as to their rights in the premises. While that question is
 
 sub Ute¡
 
 the possession ought not to be chan" ged.
 

 The case has been treated as one of a trust in Cotton’ purely for Morgan, and therefore falling within the first section of the act of 1812. We suppose it mu«t be so considered after the payment of the debts to Saunders and Coggin; because then there is a resulting trust for the maker of the deed exclusively. But if, upon the principle of Harrison v Battle, 2 Dev. Eq. 537, this was to be considered as an equity of redemption, within the second section of the act, the result would be the same.. For the words of that section
 
 *300
 
 “that the equity of redemption inlands mortgaged shall
 
 in like manner
 
 be liable to any
 
 execution sued out
 
 on’ .any judgment against the mortgagor.” Neither
 
 section
 
 carries the liability of the lands, held in trust or mortgaged, further back than execution actually sue<^ Until the creditor takes out his process, purchasers may safely deal for the trust equity of redemption, according to the statute.
 

 For these reasons we think thedecree ofhis Honor was erroneous, and that it should be reversed, and the injunction continued to the hearing.
 

 Per Curiam. Ordered to be certified accordingly.